IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 27 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

| | | |
|---|---|---|
| EARL THOMAS, III, | ) | |
|     Petitioner, | ) | Civil Action No. 7:06CV00324 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GENE M. JOHNSON, | ) | By: Hon. Glen E. Conrad |
|     Respondent. | ) | United States District Judge |

Earl Thomas, III, a Virginia inmate proceeding pro se, filed this action as a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Thomas challenges the validity of his convictions in the Circuit Court for the City of Waynesboro. The petition is presently before the court on respondent's motion to dismiss. For the reasons set forth below, the court will grant respondent's motion.

## BACKGROUND

On November 12, 2002, Thomas was indicted by a grand jury in the City of Waynesboro for the robberies of two employees at a local Hallmark store on June 7, 2002. Assistant Public Defender Robert T. Garnett was subsequently appointed to represent Thomas.

On February 10, 2003, Garnett filed a motion to suppress the victims' photographic identifications of Thomas on the basis that the photographic line-up was unduly suggestive. Garnett also filed a motion in limine requesting an order prohibiting the Commonwealth from introducing evidence of a similar crime for which Thomas was convicted in Hanover County. The trial court ultimately denied the motion to suppress on February 13, 2003. The trial court postponed ruling on the motion in limine.

On February 20, 2003, the trial court permitted Garnett to withdraw as Thomas's counsel. A private attorney, Michael J. Hallahan, II, was appointed to represent Thomas on March 31, 2003.

On May 28, 2003, Hallahan filed a series of motions, including a motion to reconsider the motion to suppress the victims' photographic identifications. The trial court declined to reconsider the motion. That same day, Thomas was arraigned on the robbery charges. He entered pleas of not guilty to both charges.

A jury trial was held on May 30, 2003. The evidence at trial revealed that Amanda Craig and Erin Hoffman were working at Donna's Hallmark in Waynesboro, when they were robbed on June 7, 2002. (Trial Tr. at 91-92, 206).

Craig testified that the robber entered the store on the day of the robbery and asked the employees whether the store sold any glass slippers. (Tr. at 92). Craig subsequently showed the robber a particular item on display. (Tr. at 92). The robber told Craig that the item was not what he was looking for and exited the store. (Tr. at 92). The robber later reentered the store and demanded money from the registers. (Tr. at 88). Craig testified that the robber was pointing an object at Hoffman and her under his sweater, and that she thought the object was a gun. (Tr. at 88). After Hoffman handed the robber the money, the robber ordered the two employees to go to the back of the store. (Tr. at 90). At that point, the robber exited the store again. Craig described the robber as a "dark-complected" black male with a bald head and no facial hair. (Tr. at 104). Craig also indicated that the robber was wearing a multicolored sweater on the day of the robbery. (Tr. at 89). After describing the incident, Craig testified that she was "a hundred percent" certain that Thomas was the robber. (Tr. at 92). Craig also identified a sweater belonging to Thomas as the one worn by the robber. (Tr. at 89).

2

Erin Hoffman also positively identified Thomas as the robber at trial. (Tr. 207). Hoffman testified that the sweater introduced by the Commonwealth was the same "busy sweater" that was worn by the robber. (Tr. at 207). Hoffman testified that on the day of the robbery, the robber entered the store, asked about a particular item, and exited the store. (Tr. at 211). Shortly thereafter, the robber reentered the store, demanded money from the registers, and directed the employees to go the back of the store. (Tr. at 208-209). Hoffman testified that the robber was holding an object under his sweater, and that she thought the object was a gun. (Tr. at 208). Hoffman also testified that there was no one else in the store at the time of the robbery. (Tr. at 211).

Anya Geer testified that she was working in a convenience store in Hanover County on May 22, 2002, when Thomas entered the store wearing the same sweater that was previously identified by Craig and Hoffman. (Tr. at 183-185). Geer testified that Thomas asked about a specific item and left the store. (Tr. at 184). Approximately fifteen to twenty minutes later, Thomas returned to the store and demanded money. (Tr. at 183-186). Thomas then exited the store after directing Geer to go to the back room. (Tr. at 187). Geer identified a series of photographs taken from the convenience store's security camera tape. (Tr. 192). Geer testified that Thomas was the man in the photographs, and that the photographs accurately depicted the clothes that Thomas was wearing on the day he entered the convenience store.[1] (Tr. at 192).

Waynesboro Police Sergeant Becky Weaver investigated the Hallmark robbery. Sargent Weaver testified that the victims described the robber as a "tall middle-aged black male, bald head, wearing a very distinctive sweater." (Tr. at 129). After eliminating certain suspects,

---

[1] Thomas ultimately pled guilty to the charge of grand larceny from the person in Hanover County. (Tr. at 190).

3

including a young black man named Clifford Wade,[2] Weaver received a photograph of Thomas

from an investigator in Richmond. (Tr. at 137). Weaver used the photograph of Thomas and

other photographs on file to create a photographic line-up. (Tr. at 137). Weaver explained that

she attempted to choose photographs of individuals who had similar features to those of Thomas,

including a balding head, a round face, and a mustache.[3] (Tr. at 139). Weaver also attempted to

utilize photographs of individuals from the same age bracket. (Tr. at 139-140). Weaver testified

that she showed the photographic line-up to Craig and Hoffman on separate occasions, and that

both victims identified Thomas as the robber. (Tr. at 140-141).

For its case, the defense called Sergeant Brian Edwards, the Media Relations Officer for

the Waynesboro Police Department. Edwards testified that he provided the local newspaper a

press release containing a description of the robber's approximate age and size. (Tr. at 246).

Edwards testified that he received the information from Sergeant Weaver. (Tr. at 247, 248).

Edwards also testified that he knew Clifford Wade, one of the original suspects, and that Wade's

age and size fit the description. (Tr. at 246-249).

Defense counsel then called Clifford Wade as a witness. (Tr. at 250). Wade testified that

he talked to Sergeant Weaver after the incident, that he told her he did not know who had

committed the robberies, and that he allowed her to take his fingerprints. (Tr. at 251-253).

---

[2]Wade was identified as a suspect based on information provided by James Driver, an employee
at a neighboring Food Lion store. (Tr. at 131-132). However, neither victim identified Wade as the
robber when presented with his photograph. (Tr. at 132).

[3]Weaver explained that Thomas had a mustache in the picture obtained from the officer in
Richmond. (Tr. at 139). When questioned "about the fact that the initial description of the robber ... had
him with no facial hair," Weaver emphasized that "[m]en can grow mustaches in two days." (Tr. at 139).

4

Wade also testified that he had not worn a sweater on the day in question, and that he had, in fact, worn shorts because "it was ... hot." (Tr. at 254).

Defense counsel recalled Sergeant Weaver. (Tr. at 255). Weaver testified that while the press release reported that the robber had been in his late teens to early 30's, the verbal age description that she had actually conveyed to Sergeant Edwards was much broader. (Tr. at 260). Weaver explained that the younger estimate was based on information received from James Driver, who had seen a suspicious person at the neighboring Food Lion store, and that the older estimate, "middle-aged," had come from the actual victims. (Tr. at 259-260).

As its final witness, the defense called Mike Owens, the newspaper reporter responsible for printing the press release. (Tr. at 263). Owens reviewed the press release, and testified that it contained the information that he received from Sergeant Edwards. (Tr. at 263).

The jury ultimately found Thomas guilty of both robbery charges. In accordance with the jury's verdict, the court sentenced Thomas to a total term of imprisonment of ten years.

Thomas appealed the convictions to the Court of Appeals of Virginia. He raised the following claims on direct appeal:

1. The trial court erred in denying his motion for appointment of an expert in cross-racial identification.

2. The trial court erred by admitting evidence of another crime for which he pled guilty.

3. The trial court erred by allowing the Commonwealth's Attorney to refer to the prior offense as a robbery.

4. The trial court erred in denying his motion to suppress the identifications made from a suggestive photographic line-up.

5. The trial court erred in denying his motion to reconsider the motion to suppress based on the appointment of new counsel.

5

6.     The trial court erred by failing to run his sentences concurrently.

A judge on the Court of Appeals denied Thomas's petition for appeal on all six grounds. The decision was upheld by a three-judge panel.

Thomas then filed a petition for appeal in the Supreme Court of Virginia. The petition for appeal was dismissed on August 5, 2004, and on October 1, 2004, Thomas's petition for rehearing was denied.

On June 17, 2005, Thomas filed a petition for writ of habeas corpus in the Circuit Court for the City of Waynesboro. The petition included the following claims:

a.     The Court of Appeals used erroneous facts to justify rejecting Thomas's appeal.

b.     The Court of Appeals erroneously concluded that the photo spread contained all black males to deny his forth claim on appeal.

c.     The Court of Appeals erroneously concluded that two of the photos in the photo spread were of balding black males which made the spread less suggestive.

d.     The Court of Appeals erroneously concluded that the eyewitnesses all identified the sweater worn by the robber.

e.     The Court of Appeals erred by concluding that both victims were positive in their identifications of Thomas at trial.

f.     Defense counsel was ineffective for failing to investigate and object to how Thomas's photo was obtained in Richmond and emailed to Waynesboro.

g.     Defense counsel was ineffective for failing to investigate the search warrant used to obtain the sweater.

h.     Defense counsel was ineffective for failing to investigate the affidavit used to obtain the search warrant.

I.     Defense counsel was ineffective for failing to subpoena certain witnesses.

j.     Defense counsel was ineffective for failing to object to the identification at the preliminary hearing.

k.     Defense counsel was ineffective for failing to request a Batson challenge.

6

l.      Thomas was unduly prejudiced, because the trial court allowed the Commonwealth to refer to him as the robber.

m.      The evidence at trial was insufficient to prove beyond a reasonable doubt that Thomas was the robber.

n.      Defense counsel was ineffective for not objecting when the Commonwealth failed to offer proof that Thomas entered the store in Hanover and returned fifteen minutes later.

o.      Detective Weaver deliberately composed a photo spread to single out Thomas.

p.      Evidence of other crimes should not have been admitted at trial.

On September 22, 2005, the state habeas petition was dismissed by the Circuit Court. Thomas appealed the dismissal of the petition to the Supreme Court of Virginia, and on March 15, 2006, the petition for appeal was refused.

Thomas filed the instant petition on May 25, 2006. The petition includes the following claims:

1.      The Court of Appeals used erroneous facts to justify the trial court's decision that Thomas's rights were not violated by the pre-trial photo identifications.

2.      The Court of Appeals violated Thomas's constitutional rights by ruling "all the men in the photo line-up were black males."

3.      The Court of Appeals violated Thomas's constitutional rights when it ruled that the photo line-up was not suggestive, and that Thomas "was the only balded headed photo in the line-up."

4.      The Court of Appeals erred by ruling that the eyewitnesses all identified the multi-colored sweater worn during both offenses.

5.      The Court of Appeals erred in concluding that both victims were positive in their identifications of Thomas at trial, because their identifications were based on a "suggestive photo line-up."

7

6. Defense counsel was ineffective for failing to object to the photo of Thomas used in the line-up, because it came from a police officer in Richmond, where Thomas became a suspect due to suggestive pre-trial identification procedures.

7. Defense counsel was ineffective for failing to object to the admissibility of the sweater, because it was the product of an illegal search warrant.

8. Defense counsel was ineffective for failing to investigate the affidavit used to obtain the search warrant.

9. Defense counsel was ineffective for failing to subpoena and/or call certain witnesses.

10. Thomas's due process rights were violated as a result of not receiving a "full line-up."

11. Thomas was denied the right to a "fair cross section of the jury."

12. The prosecutor referred to the Hanover County offense as a robbery, even though Thomas was convicted of grand larceny from the person.

13. The evidence was insufficient to prove Thomas "robbed the card store beyond a reasonable doubt."

14. "Petitioner was denied his right to due process and equal protection by Detective Weaver in her preparation of the suggestive photo spread she created."

15. The trial court erred in admitting evidence of the Hanover County crime.

On August 11, 2006, the respondent moved to dismiss the petition. Since Thomas has now filed a response to the motion, the petition is ripe for review.

## **STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 2254(b), a petitioner challenging a state court conviction must first exhaust remedies available in the courts of the state in which he was convicted before seeking federal habeas review. See Preiser v. Rodriguez, 411 U.S. 475 (1973). When a claim has been adjudicated on the merits by a state court, this court may grant habeas relief only if the state court's adjudication of the claims "was contrary to, or involved an unreasonable application

8

of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). The United States Supreme Court has explained that this statute "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000) (internal citations omitted). Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Id. at 389.

## DISCUSSION

A.    Claims 1 through 5 and 14

In claims 1 through 5, Thomas argues that the Court of Appeals erred in affirming the trial court's decision to deny his motion to suppress the photo identification evidence. In claim 14, Thomas argues that Detective Weaver created an unduly suggestive photo spread. Thomas raised the same arguments in his state habeas petition as claims a, b, c, d, e, and o. The state habeas court concluded that claims a, b, c, d, and e were barred by Henry v. Warden, 265 Va. 246, 576 S.E.2d 495 (Va. 2003) (holding that a habeas proceeding cannot be used to relitigate issues decided on appeal), and that claim o was barred by Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974) (holding that claims not properly raised at trial or on direct appeal will not be considered as a basis for collateral relief). However, because Thomas also challenged the admission of the identification evidence on direct appeal, the issue is cognizable on federal habeas review to the extent that it was raised on appeal. See Correll v. Thompson, 63 F.3d 1279, 1290, n. 8 (4th Cir. 1995) (recognizing that the rule announced in Hawks v. Cox, 211 Va. 91, 175 S.E.2d 271 (Va. 1970), the predecessor to Henry, "does not bar federal habeas review of claims

9

that already may be properly considered by this court through their presentation on direct appeal."); Mir Aimal Kasi v. Angelone, 300 F.3d 487, 502 (4th Cir. 2002) (holding that the dismissal of a state habeas claim as procedurally barred under Slayton did not bar federal habeas review of the claim, since it had been presented to the state court on direct appeal).

On direct appeal, Thomas argued that the trial court erred in denying his motion to suppress the identifications made from the photographic line-up. Thomas argued that the line-up was unduly suggestive, in violation of his due process rights. The Court of Appeals ultimately concluded that Thomas's arguments were without merit. In reaching this conclusion, the Court of Appeals explained as follows:

> Appellant maintains the trial court erred by denying his motion to suppress the identifications made from a suggestive photographic line-up. "An out-of-court identification is admissible if either (1) the identification was not unduly suggestive; or (2) the procedure was unduly suggestive, but the identification was so reliable that there is no substantial likelihood of misidentification." Charity v. Commonwealth, 24 Va. App. 258, 261, 482 S.E.2d 59, 60 (1997). "A valid line-up does not require 'that all the suspects or participants be alike in appearance and have the same description, as long as there is nothing to single out the accused from the rest.'" Id. at 261-62, 482 S.E. 2d at 60 (citation omitted). If the procedure was suggestive the factors for determining the reliability of identification testimony include:
>
>> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
>
> Neil v. Biggers, 409 U.S. 188, 199-200 (1972).
>
> ...Assuming, without deciding, that the line-up was suggestive by singling out appellant as the only bald male, the other evidence showed that the identifications were reliable. One victim picked appellant before she looked at all the pictures. When

10

told to look at them all, she still identified appellant. Both victims were positive in their identifications. They had the opportunity to see appellant twice in the store, face-to-face. Further, the evidence concerning the likeness between this case and the Hanover case corroborated their identifications. They all identified the multicolored sweater worn during both offenses. Therefore, there was sufficient indicia of reliability to properly allow the admission of the identifications. Accordingly, the trial court did not err by denying appellant's motion to suppress the identification evidence.

Having reviewed the record, the court agrees with the respondent that the Court of Appeals properly applied the factors set forth by the United States Supreme Court in Neil v. Biggers, and that the Court of Appeals' decision did not involve an unreasonable determination of the facts. Accordingly, claims 1 through 5 and 14 must be dismissed.

B.    Claim 6

In Claim 6, Thomas alleges that defense counsel was ineffective for failing to object to to the photograph that was used in the line-up. Thomas contends that his photograph was obtained from a police officer in Richmond, where he allegedly became a suspect in a different robbery due to suggestive pretrial identification procedures.

A criminal defendant's right to effective assistance of counsel is protected by the Sixth Amendment to the United States Constitution. In Strickland v. Washington, 466 U.S. 668, 669 (1984), the United States Supreme Court set forth a two-prong test for evaluating ineffective assistance claims. The defendant must show that his counsel's performance fell "below an objective standard of reasonableness," and that the "deficient performance" must have "prejudiced the defense." Id. at 687-688. The prejudice prong "generally requires the defendant to demonstrate by a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." Frazer v. South Carolina, 430 F.3d 696, 703 (4th Cir. 2005).

11

Thomas raised the same ineffective assistance claim in his state <u>habeas</u> petition. The state <u>habeas</u> court concluded that the claim failed to satisfy either prong of the <u>Strickland</u> test. The state <u>habeas</u> court determined that counsel's performance was not unreasonable, since "there is no constitutional requirement that the police must obtain a suspect's consent to take his photograph." The state <u>habeas</u> court also determined that the alleged error did not prejudice Thomas's defense. Because Thomas has failed to show that the state <u>habeas</u> court's disposition of this claim was contrary to clearly established federal law, or that it involved an unreasonable determination of the facts, claim 6 must be dismissed.

C.  <u>Claims 7 and 8</u>

In claim 7, Thomas alleges that defense counsel was ineffective for failing to object to the admission of the sweater that was introduced as evidence by the Commonwealth. Thomas contends that the Commonwealth received the sweater from police officers in Richmond, who had previously obtained it pursuant to an illegal search warrant. Similarly, in claim 8, Thomas alleges that defense counsel was ineffective for failing to object to the admission of the sweater, because the affidavit used to obtain the search warrant contained a false statement.

Thomas raised the same claims in his state <u>habeas</u> petition. The state <u>habeas</u> court concluded that the claims did not satisfy the <u>Strickland</u> test. Having reviewed the record, the court agrees with the respondent that the state <u>habeas</u> court's decision is entitled to deference under 28 U.S.C. § 2254(d). Thomas has failed to establish that there is a reasonable probability that he would have been acquitted, had the sweater, itself, not been admitted. As the state court noted in its decision, the sweater was "simply additional corroborative evidence"; the Commonwealth's evidence "still would have identified Thomas as the Waynesboro robber ...

12

even if the sweater itself had not been introduced at trial." Therefore, claims 7 and 8 must also be dismissed.

D.    Claim 9

In claim 9, Thomas alleges that defense counsel was ineffective for failing to subpoena and/or call certain witnesses. Specifically, Thomas contends that Malika Brooks would have testified that the sweater worn by the robber had been sold in the Waynesboro area for "quite some time." Thomas contends that his college instructor would have testified that he had always worn a mustache. Thomas contends that Dennis Moore would have testified that he entered the Hallmark store shortly before 6:00 p.m., and that he told the police officers that he did not see anyone in the store wearing a uniquely designed sweater. Thomas further alleges that two unidentified witnesses would have testified that the robber was "tall and skinny."

Having reviewed the record, the court agrees with the respondent that claim 9 is without merit, and that the state habeas court's adjudication of this claim is also entitled to deference under § 2254(d). First, as the respondent points out, defense counsel did not act unreasonably in failing to subpoena and/or call Moore or the two unidentified witnesses, since the only individuals present during the robbery were the robber and the victims. Second, even if the court was to conclude that defense counsel should have presented the testimony of the witnesses identified by Thomas, the court is satisfied that there is no reasonable probability that the witnesses' testimony would have resulted in a different verdict. Accordingly, claim 9 must be dismissed.

E.    Claim 10

In claim 10, Thomas alleges that his constitutional rights were violated as a result of not receiving a "full line-up." Thomas did not raise this claim on direct appeal. Instead, the issue

13

was raised in his state <u>habeas</u> petition in the context of an ineffective assistance claim. Because the issue was raised in a different context, claim 10 is arguably procedurally defaulted. <u>See</u> <u>Duncan v. Henry</u>, 513 U.S. 364, 365-366 (1995) (holding that a petitioner must raise the same federal constitutional claim in state court that he raises in federal court). If Thomas now attempted to raise the claim in a state <u>habeas</u> petition, it would be barred by Virginia Code § 8.01-654(B)(2) (generally prohibiting successive petitions). However, even if the claim is not procedurally defaulted, it is still subject to dismissal. As the respondent points out, criminal defendants have no constitutional right to a "full line-up." <u>See</u> <u>United States v. Jones</u>, 495 F.2d 1370 (4th Cir. 1974) ("[A] defendant has no enforceable right to a line-up, even if the request is timely made."); <u>United States v. White</u>, 482 F.2d 485, 488 (4th Cir. 1973) ("There is no authority to support a contention that a defendant has a legal right to a line-up, if he requests it."); <u>Doss v. Correctional Dep't Unit # 24</u>, 396 F. Supp. 806, 807 (W.D. Va. 1975) ("A person has no right to be placed in a line-up."). Thus, claim 10 must be dismissed.

    F.    <u>Claim 11</u>

In claim 11, Thomas alleges that he was denied the right to a "fair cross section of the jury." Specifically, Thomas alleges that the prosecutor exhibited purposeful discrimination in selecting the jury by "systematically using his peremptory challenge[s] to exclude the only two black people in the jury pool." Like claim 10, this claim is arguably procedurally defaulted since it was solely raised in Thomas's state <u>habeas</u> petition as an ineffective assistance claim. <u>See</u> <u>Duncan</u>, 513 U.S. at 365-366; Va. Code § 8.01-654(B)(2). Nonetheless, the court will consider the claim on the merits.

In <u>Batson v. Kentucky</u>, 476 U.S. 79, 89 (1986), the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on

14

account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." In order to establish a prima facie case of discrimination under Batson, a defendant must satisfy the following three elements: (1) that the defendant is a member of a distinct racial group; (2) that the prosecutor used the challenges to remove from the venire members of the defendant's race; and (3) that other facts and circumstances surrounding the proceeding raise an inference that the prosecutor discriminated in his selection of the jury pool. Id. at 96; Keel v. French, 162 F.3d 263, 271 (4th Cir. 1998). Once a prima facie case is established, the burden shifts to the prosecution to advance a race-neutral reason for the peremptory strikes. Batson at 97. The trial court must then determine whether the challenges were exercised for a racially discriminatory reason. Id. This is a factual determination, Hernandez v. New York, 500 U.S. 352, 360 (1991), which is presumed to be correct in a habeas proceeding. See 28 U.S.C. § 2254(e)(1). Consequently, in order to prevail on this claim, Thomas must show by clear and convincing evidence that the trial court erred in finding that the prosecutor's explanations for the peremptory strikes were race-neutral and not pretexts for discrimination. Id.

In this case, the trial court concluded that defense counsel's objection under Batson was untimely, given the fact that the objection was not voiced until after the jury had been sworn. (Tr. at 60-61). Nevertheless, the trial court asked the Commonwealth's Attorney to explain his reasons for exercising peremptory strikes against the two African-American jurors. The Commonwealth's Attorney explained as follows:

> The Commonwealth's second strike was Christopher D.
> Powell, a black gentleman, 44 years of age. The Commonwealth
> struck him. I did not ask him any questions. However, Mr. Powell
> was investigated by the Waynesboro Police Department
> approximately five years ago on suspicion of rape. He was

15

questioned by the Police Department; he was ... the Police were building a case. The case fell apart when their witness to the rape disappeared. I struck him because of his prior involvement with the Waynesboro Police Department, his suspicion - his suspicion of a violent crime - and, of course, rape is often a crime built on eyewitness testimony. So, that's my independent articulated basis for striking Mr. Powell.

My final strike was Ms. El Clark. She's 59, and lives on Grayson Avenue. Ms. Clark was struck - stricken because there have been 61 Police contacts at her home at 899 Grayson Avenue in the last ... approximately four years, I think. It may be a little bit longer than four years.

Ms. Clark has three children. Her children are Germaine Clark, James Milton Clark, and the daughter is Java Clark. Germain, James Milton, and Java have all been prosecuted on numerous occasions by the Commonwealth's Attorney's Office for the City of Waynesboro. They were prosecuted previously by Mr. Poland's office. Since Mr. Ajemian took office in 1996, each of them have been prosecuted individually by my office. There have been the Police calls involving all of those children, to the 899 Grayson Avenue. In addition, there have been search warrants executed by the Waynesboro Police Department involving those three children.

So because of her extensive contact with the Waynesboro Police Department, and her family's extensive contact, through - their involvement with the Police Department, I based my opinion on that; and that - that was the articulated basis for Ms. Clark being stricken.

(Tr. at 62-63). Upon hearing from the Commonwealth's Attorney, the trial court made the

following findings:

The record ought to be clear, again - once again, once the jury was placed in the box, there was a time lapse, when the motion could have been made. It wasn't, and the jury was sworn.

However, again, so that we're clear on the record, the court would find - even if the - even if the motion had been timely - that the Commonwealth has clearly provided neutral explanations, that are credible, which relate to each of these individuals, so that it would be clear on the record there would have been sufficient

16

> neutral explanation[s] with respect to both of these people to rebut any prima facie case.
>
> And the court would also find that they - these explanations are extremely specific, and could in no way be construed as pretextual in nature. As I say, they are very specific. And the court would find, even if it were timely, that clearly the Commonwealth ... provided a completely neutral reason, that is anything but pretextual in this case.

(Tr. at 63-64). Because Thomas has failed to show by clear and convincing evidence that the trial court erred in finding that the peremptory strikes were not exercised for racially discriminatory reasons, claim 11 must be dismissed.

G.   Claim 12

In claim 12, Thomas alleges that the trial court erred by allowing the Commonwealth's Attorney to refer to the Hanover County offense as a robbery, even though he was actually convicted of grand larceny from the person. To the extent this claim only involves an issue of state law, the claim is not cognizable on federal habeas review. As the United States Supreme Court explained in Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Instead, the court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Thus, evidentiary rulings by a state trial court are cognizable on federal habeas review "only to the extent that they violate specific constitutional provisions or are so egregious as to render the entire trial fundamentally unfair, thereby violating the Due Process Clause of the Fourteenth Amendment." Howard v. Moore, 131 F.3d 399, 415 (4th Cir. 1997). Having reviewed the record, the court is unable to conclude that the evidentiary ruling at issue rose to the level of a constitutional violation. Consequently, claim 12 is not cognizable on federal habeas review.

The court notes that even assuming that the claim is cognizable, it is still subject to

dismissal. Thomas raised the same claim on direct appeal. The Court of Appeals ultimately

concluded that the claim was without merit, explaining as follows:

> Prior to trial, by agreement of counsel, the trial court granted
> appellant's motion in limine to preclude the Commonwealth from
> referring to the Hanover offense as robbery. Appellant had pled
> guilty to larceny from the person. In the course of trial, however, the
> witness from Hanover was allowed to testify about the events of the
> crime. Based on her description of how the crime occurred, the trial
> court determined that it was appropriate to refer to the event in terms
> of robbery, despite the legal conviction. "The court's evidentiary
> rulings must be based on the case as it actually develops, not as it
> may be supposed prospectively that it will develop. 'A trial court is
> empowered to change a legal determination as long as it retains
> jurisdiction over the proceedings before it.'" Bottoms v.
> Commonwealth, 22 Va. App. 378, 383-384, 470 S.E.2d 153, 156
> (1996) (citation omitted). Further, the trial court gave a cautionary
> instruction advising the jury to consider the evidence concerning the
> crime in Hanover only as evidence of identity. "[I]t is always to be
> presumed that the jury followed an explicit cautionary instruction
> promptly given, unless the record clearly shows that the jury
> disregarded it." Spencer v. Commonwealth, 240 Va. 78, 95, 393
> S.E.2d 609, 619 (1990). Accordingly, the trial court did not err by
> allowing the Commonwealth to refer to the Hanover offense in terms
> of robbery.

Because the Court of Appeals adjudicated the claim on the merits, Thomas must establish that

the Court's ruling resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Supreme Court precedent, or that it was based on an

unreasonable determination of the facts. 28 U.S.C. § 2254(d). Thomas, however, does not

identify, and this court is unable to locate, any Supreme Court precedent that is contrary to the

Court of Appeals' ruling. Likewise, Thomas does not assert, and this court is unable to conclude,

that the Court of Appeals' ruling was based on an unreasonable determination of the facts.

Accordingly, claim 12 must be dismissed.

18

H.    Claim 13

In claim 13, Thomas alleges that the evidence was insufficient to support his convictions. Thomas previously raised this claim in his state habeas petition. The state habeas court held that the claim was barred by Pettus v. Peyton, 207 Va. 906, 911, 153 S.E.2d 278, 281 (1967) (holding that a sufficiency of the evidence claim cannot be raised in a habeas corpus proceeding). As a result, the respondent now argues that the claim should be dismissed as procedurally defaulted. However, because the respondent makes no effort to demonstrate that the rule announced in Pettus constitutes an "adequate and independent" state ground for the denial of federal habeas relief, the court declines to dismiss the claim on that basis, and will instead review the claim on the merits. See Roach v. Angelone, 176 F.3d 210, 221 (4th Cir. 1999) ("Where a state court expressly denies a claim under a state procedural default rule, the defendant is generally precluded from raising that claim in a federal habeas corpus proceeding. The basis for the procedural default, however, must be an adequate and independent state ground.").

When reviewing the sufficiency of the evidence to support a conviction, the critical inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The court must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). The court does not weigh the evidence or consider the credibility of witnesses. United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983).

Applying these principles, the court concludes that any rational trier of fact could have found the essential elements of the crime at issue beyond a reasonable doubt. Under Virginia

19

law, the crime of robbery "consists of a taking of property with intent to steal from the person or presence of another, against his will, by violence or intimidation." <u>Sutton v. Commonwealth</u>, 228 Va. 654, 664, 324 S.E.2d 665, 670 (Va. 1985). In this case, both victims testified that the robber entered the Hallmark store and asked if the store sold any glass slippers. (Tr. at 92, 211). After Hoffman showed him a particular item, the robber left the store. (Tr. at 92, 211). Shortly thereafter, the robber reentered the store and demanded money from the registers. (Tr. at 88-92, 208-209). After Hoffman provided the money, the robber directed Hoffman and Craig to go to the back of the store. (Tr. at 187, 208-209). The victims testified that the robber had something pointing at them under his sweater, and that they thought the object was a gun. (Tr. at 88, 208). Both victims positively identified Thomas as the robber in a photographic line-up, as well as at trial (Tr. at 92, 140-141, 207). Likewise, both victims identified Thomas's sweater as the sweater worn by the robber. (Tr. at 89, 207). The victims' identifications were corroborated by the testimony of Anya Geer, who testified that Thomas was wearing the same sweater on the day that he demanded money from her at a convenience store in Hanover County. (Tr. at 183-185). Similar to the Hallmark robbery, Geer testified that Thomas had previously entered the convenience store and asked about a particular item, before he returned and demanded money. (Tr. at 283-187). When viewed in the light most favorable to the Commonwealth, the court concludes that the evidence is sufficient to support Thomas's robbery convictions. Therefore, claim 13 must be dismissed.

I.     <u>Claim 15</u>

In his final claim, Thomas argues that the trial court erred in admitting evidence of the Hanover County offense. Thomas contends that the evidence was unduly prejudicial. As previously explained, state trial court rulings regarding the admission or exclusion of evidence

are cognizable on federal habeas review only to the extent that they violate specific constitutional provisions or give rise to circumstances impugning fundamental fairness. Howard v. Moore, 131 F.3d at 415. Having reviewed the record in this case, the court is unable to conclude that this standard was met. As the Court of Appeals noted on direct appeal, evidence of the Hanover County offense was highly probative and relevant to the issue of identity, since the offense bore substantial similarities to the Hallmark robberies. "Because the significant probative value of the evidence was not outweighed, much less significantly weighted, by any prejudice from its admission, the 'fundamental fairness' of [the petitioner's] trial was not compromised." Chichester v. Taylor, 1999 U.S. App. LEXIS 104, at *23 (4th Cir. July 6, 1999).

Even assuming that the claim is cognizable on federal habeas review, it is still subject to dismissal. Because the Court of Appeals adjudicated the same claim on the merits, Thomas must establish that the Court of Appeals' ruling is not entitled to deference under 28 U.S.C. § 2254(d). Thomas, however, does not identify, and this court is unable to locate, any Supreme Court precedent that is contrary to the Court of Appeals' ruling. Likewise, Thomas does not assert, and this court is unable to conclude, that the Court of Appeals' ruling was based on an unreasonable determination of the facts. Accordingly, claim 15 must be dismissed.

## CONCLUSION

For the reasons stated, the court will grant the respondent's motion to dismiss. The Clerk is directed to send certified copies of this opinion and the accompanying order to the petitioner and counsel of record for respondent.

ENTER: This ___ day of October, 2006.

_____
United States District Judge

Case 7:06-cv-00324-GEC-mfu    Document 25    Filed 10/27/06    Page 21 of 21    Pageid#: 288